successfully litigated a meritorious claim mandated by federal law, the district court that plaintiffs' attorneys were engaged in a scheme to abuse the Fair Debt Collection Practices Act. As purported evidence for this scheme, the district court pointed to two things. First was the dispute letter at issue in that case, which the court believed was unclear, deceptive, or misleading in some way. That was clearly erroneous. The letter was three sentences long, four lines of text, and said the amount you are reporting is not accurate. Similar claims involving nearly identical dispute letters have been found to be clear and unambiguous. In fact, in another case proceeding in the same district, Jones v. Portfolio Recovery, another judge, Judge Pittman in the Western District of Texas, ruled on summary judgment that an identically worded letter was clear and unambiguous as a matter of law, and specifically stated that no reasonable jury could conclude otherwise that it was Similarly, in the Evans case proceeding before the Seventh Circuit, which consolidated four separate district court cases involving similar facts, the court confirmed that a nearly identically worded letter was a plain and unambiguous dispute. Yet when Judge Sparks reviewed a nearly identically worded letter, he determined that it was unclear, misleading, deceptive, or ambiguous in some way, which was a clear error. The second item that Judge Sparks raised with respect to this purported scheme was that these same attorneys have used the same form letter in a number of other cases that were proceeding in the Western District of Texas. In the first instance, since it was a clear statement of a dispute, it's fine to use a form letter. That's not any evidence of misconduct. And in fact, the fact that there was multiple litigation against multiple different debt collectors involving the same basic facts shows not a scheme by the attorneys in this case, but instead a rampant disregard in the debt collection industry for reporting disputes to credit reporting agencies after receiving a plain, unambiguous written dispute. So there was no scheme, there was no abuse, and the district court clearly erred in so ruling. The district court also premised its sanctions on two other misguided assertions. The first is that $1,000 would have made Mr. Tejero whole, so a $1 settlement offer in the form of a Rule 68 offer of judgment made at the outset of the case demonstrates bad faith, particularly bad faith on the part of Mr. Tejero's counsel. This assertion fails for a number of reasons. First of all, what makes a consumer whole in a case like this is a question of law that is not appropriate for a fact deposition of an unsophisticated consumer witness. Indeed, there is heated and extensive litigation in this case that precisely will make a litigant whole, and different parties take different views. So asking, again, an unsophisticated consumer in the context of a fact deposition to make a legal determination about a make-whole amount was improper and not evidence of anything. In addition, Mr. Tejero testified that he was aware of the $1,101 offer, knew that it was an offer of settlement, and chose not to respond to it. And in the context of a So Mr. Tejero knew about the offer and rejected it, which conflicts with this notion that $1,000 was enough to satisfy his claims. On top of that, at the time of the deposition, the Texas Fair Debt claim, the state law claim, was still alive. It was later disposed of in summary judgment, but at the time of Mr. Tejero's deposition, the claim was still alive. And in addition to statutory and actual damages, the Texas Fair Debt Act allows exemplary damages, which are essentially punitive damages. And, as has been seen in other cases with nearly identical facts, most notably that Jones v. Portfolio Recovery case, the jury in that case handed down a verdict of $60,000 on nearly identical facts, based largely on the exemplary damages that they determined to award in that case. So, when you have a claim that is potentially worth tens of thousands of dollars, even if $1,000 could technically make you whole as to your actual and statutory damages, it's not unfair to say that it's an appropriate legal strategy to pursue more, because you could potentially be entitled to far more than merely the statutory or actual damages. And lastly, Mr. Tejero actually obtained a settlement that was worth far more than $1,000. The terms of the settlement were $1,000 in cash and then forgiveness of the alleged $2,111 debt. So the total value of the settlement that he ultimately obtained was over $3,100, which is a little less than three times what was originally on offer at the outset of the case. So rejecting that lowball initial offer was not evidence of bad faith. Can we go back to your attorney's fees argument under — I want to go back to your argument that Mr. Tejero is entitled to fees under 1692Ka3. Do you think that the phrase, in the case of any successful action, is different than the prevailing party language that Congress has used elsewhere in, for example, Section 1988 for civil rights claims? It is different, but the analysis when determining successful litigation, the courts borrow the language of the civil rights litigation. But under either analysis, prevailing party successful claim, Mr. Tejero's settlement qualifies. So prevailing parties need more than a settlement. Would you agree? No, no, not necessarily. So what would be the best case that just a private settlement, not a consent decree, not court-awarded judgment, private settlement between litigants — because I'm unaware of it — what would be the best case that would satisfy under 1988? Well, I would point to the Supreme Court's ruling in Farrar v. Hobby. I don't believe I cited it in the briefing, but the citation is 506 U.S. 103. And if it pleases the court, I'll just read the paragraph because I think it speaks for itself. It kind of collapses a bunch of things into one, but I think nevertheless it's informative. And so quoting from page 111 of that case, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever the relief plaintiff secures must directly benefit him at the time of the judgment or settlement. In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." So the settlement here was $1,000 cash and forgiveness of a debt that Portfolio Recovery claimed to be legitimate that altered the relationship between the parties and benefited the plaintiff in a material way. Therefore, under the Supreme Court's construction, he qualifies as a prevailing party and he was entitled to his reasonable attorney's fees. I mean, the Court has said in all kinds of other 1988 contexts, which is why I'm wondering if there's a meaningful difference in the statutory text, that things like the so-called catalyst theory don't suffice to make somebody a prevailing party under 1988. That's not judicially sanctioned, right? It's not done by the court in the context of a judgment, a consent decree, and so it doesn't count. They've said in 1988. Now, I guess my question to you is, how would 1962K be different? 1692K, Your Honor? I'm sorry. Yes. 1692K. Well, again, the difference is that these are small-dollar claims that are fee-shifting. And so a meaningful recovery that materially alters the relationship between the parties is going to be a much — necessarily, I think, a much smaller distinction than a civil rights claim where you're litigating fundamental rights between the parties that speak to constitutional rights that the parties have between each other. Here, there's a couple thousand bucks that one party claims is owed to another. And when you settle that and you eliminate that couple thousand bucks and, in fact, the flow of funds reverses and goes in favor of the plaintiff, I don't think that there's a way to construe that as being other than a prevailing party. Yeah, but in Farrar, you've got a jury verdict with special interrogatories and the whole thing. I mean, that's obviously very different than a private settlement between parties. I'm not even getting to whether, you know, the 3,100 is different than the 1,000. We'll just stipulate that. I mean, it's — negotiating a private agreement is very different than going to jury verdict and having special interrogatories as in Farrar. I understand, Your Honor, but I do believe that the Court's statement in Farrar nevertheless provides pretty clear guidance. And there's almost like a laundry list of factors that you look at when determining are you a prevailing party, yes or no, in the context of a private settlement. And it's unclear what else Mr. Tejero could have possibly gotten, especially since by the time this case was up for trial, there wasn't sufficient evidence of actual damages. I think we were stuck in the world of statutory damages considering the record in the case. So not only did he get the maximum that he probably could have gotten in the context of a jury trial, he got an added benefit on top of that in the form of debt forgiveness. But you just told us that an almost identical demand letter on almost identical facts generated a $60,000 jury verdict, most of which was exemplary. So it's certainly not true that 3,100 is the maximum he could have gotten. Well, at the time of the settlement it was because the Texas fair debt claim had been dispositive on summary judgment, whereas in the Jones case it had not. And so in this case, with the posture being as it was, he was the prevailing party because it would have been basically impossible for him to get more. He couldn't get exemplary damages. Yeah, couldn't get exemplary damages under the FDCPA. It's actuals and statutory only. And considering the court's ruling on actuals and the record in the case, it was pretty much a case under how much of statutory damage is somewhere between 0 and 1,000. And in the settlement he got 1,000. And then the only other question that was really up for trial was, was this dispute a sham dispute? And that question was never decided by a jury because the defendants chose to settle. So if you were to prevail, assuming arguendo, this is not foreshadowing, would the case have to go back for the attorney's fees issue or is there information in the record from which the court, is a remand necessary? A remand is not necessary, but it would require the court to essentially rule on the reasonableness of the attorney's fees as set forth in the application. Which are before us. Which are in the record. Then you don't have to address the recusal issue. In my ideal world, Your Honor, the result is that the court reviews that fee application, determines the reasonableness of the fees and moves forward. The only other issue would be the fees incurred in the appeal would also be subject to reimbursement pursuant to the FDCPA, which would require a supplemental filing. But we get that with some frequency, where people submit their affidavits and we see people are going to contest them. And sometimes we send them back to the district court to look at those and sometimes we just handle it. This case, in my view, this case could be resolved without a remand being necessary. And again, that's not foreshadowing. I'm just trying to play every possibility out. No, I understand, Your Honor. I'm sorry, while we're on this topic about whether a remand would be necessary, even on your theory, I thought that I understood from your opening brief, your blue brief, that you concede that some amount of Rule 11 sanctions would be necessary to respond to the exchange of settlement offers order? It could be. I think there would be, it wouldn't be an abuse of discretion for some amount to be assessed against plaintiff's counsel in this case. But there's two issues. One is the total value of the sanction in that case, a complete denial of approximately $14,000 of claimed fees, a complete reward of approximately $13,000 of claimed fees on the other side. So a total sanction of about $27,000 we believe is grossly excessive for missing a deadline and for a case that ultimately settled when, again, our allegation is that there were nonwritten settlement communications, but settlement communications nonetheless happening in the background, even if they weren't in writing. The other issue is the missed deadline. There's a lot of room within Rule 11, but the missed deadline is not tied to a claim that has been made. Generally speaking, Rule 11 is supposed to be a court filing that has no justification in law or fact and is otherwise for harassment or delay, which missing the court's mandated settlement, written settlement exchange deadline doesn't really qualify. But the case law, I don't think, is particularly favorable to the position that the court couldn't do it. And even if it couldn't do it under Rule 11, there's inherent authority. So that's why we concede that point. What does this practice of exchanging settlement offers? What is the practice? Yes. Is that a common Western District practice nowadays in every civil case, that those in counsel shaking their head yes? I can't speak to the Western District because most of the time I'm up in Chicago. Okay. That doesn't seem to be required by the rules or anything. There are many judges who say, especially on statutory fee-shifting claims, they want a settlement demand from the plaintiff in writing and they want a settlement demand because if you force the parties to start talking to each other, then that can enhance the possibility of a settlement early on in a case. And since these cases are usually sort of low-level damages cases, statutory damages, maybe a little tacked onto that, many FDCPA cases are like that, it makes sense to kind of force the parties together to sit down and start talking. And then here Judge Sparks wanted a written record of it, which is let the punishment fit the crime. And a $27,000 sanction when settlement negotiations did happen and when the case did ultimately settle, we believe is excessive. So under the facts of this case, sanctions were not warranted under either Section 1692K of the FDCPA or under Rule 11 of the Federal Rules of Civil Procedure. And I'm about out of time, so I will save my remaining points for later. Thank you. Before I get into my statement, Judge Elrod, yes, it is a standing part of Judge Sparks' orders in every case, not just in FDCPA cases, and it's part of his Rule 16 order that he issues. And I believe that both Judge Akel and also Judge Pittman in the Western District required. I don't think they put it in the actual local rules, but it's in every order we get, that you must do this by a certain time and the other side must respond. And the order actually says to maintain a copy of those orders because they will be considered at the end of trial when awarding attorneys' fees. So it's been that practice for eight, nine years, Judge? It's been around for a long time, if that's helpful to you. This case and Plaintiff's interpretation of the — one more thing before I get any further. I want to talk about the $3,200 that Plaintiff's counsel has — sorry, appellant's counsel raised today. I want to point out to the Court that that argument was raised for the very first time in their reply, so I'm not sure that we really addressed it in our response to pleading. But I would point out to the Court that the forgiveness of the debt that is something that could not have been awarded in trial. The only way that it could have happened is by agreement of the parties because one of the remedies that — there is no remedy that is allowed under the FDCPA for forgiveness of the actual debt. In fact, there's case law that says you can't even really consider the actual debt in making the determination about whether or not a collection agency has complied with the FDCPA. So that is raised for the first time. My point being is that's not something that could have been part of an agreement with the jury, so it really is part of a private settlement, which goes to your point, Judge Oldham, that this is not a situation where they've been a prevailing party under both, I think, the Gatewood case and also the Davis versus Judge Abbott — or, sorry, Judge Abbott, Greg Abbott case. And in those situations, the Court has found that those were private settlements and they were not prevailing parties. This case, though, I think is interesting to particularly attorneys who are dealing with the FDCPA because it brings to light a real problem that exists in a fee-shifting statute. If you adopt the plaintiff's interpretation of the statute, they would have you never apply 1692K to plaintiff's attorneys for a simple reason. They want to get all the benefit of the statute but take none of the risk. Let's talk about this case in context of the case this Court issued last year, Davis versus Credit Bureau of the South. And in that case, what happened was the plaintiff's attorneys, along with the plaintiff, who was an employee of one of the plaintiff's attorneys — not clear if it was a paralegal or a secretary, but clearly an employee of the plaintiff's attorney — engaged in actions where they created an alleged violation by the credit collection agency. What they did was they had her call the agency and suggest that her address was in Texas so that they then forwarded a collection letter to Texas, which was problematic because they didn't have a Texas bond and that would be a per se violation under the statute. In that case, the plaintiff wound up winning $1,000, which was a technical violation statutory award. The plaintiff's attorneys — and here's the rub in the statute — submitted fee petition for $130,000. And the Court ultimately said, no, that's not reasonable under these technical violation cases. You created a technical violation and then you turn around and you get this for — you're trying to get $100,000 for the real winner under this statute, which is the plaintiff's attorneys. And the Court refused to grant it. It was upheld by the Fifth Circuit. Plaintiff's attorneys talk about this case a little bit in their briefing and say, well, that's a really bad case. Ours is not the same at all. Ours is not as egregious. But I would submit to the Court that's not true. Because in our case, what we have is a completely unsophisticated gentleman whose deposition is cited in great language by both Judge Sparks and also in the briefing for the MSJ and on the appeal, who comes to a plaintiff's attorney who has no complaint about our client. He's complaining that he has too many calls, maybe, and that he can't afford to pay his debt. Plaintiff's attorney finds no violation, so they create one. They create one by faxing this letter from the plaintiff's attorney's office with the name of the consumer so it looks like it's coming from a consumer to a collection agency to create a gotcha situation. They create a technical violation that did not exist prior to that consumer walking into the plaintiff's attorney's office. And in the deposition, he testified that he didn't think my client had done anything wrong. He just couldn't pay the money and he was tired of the phone calls. That's his deposition testimony. And in light of those facts and understanding that there is a risk to this kind of litigation, my client offered more than you could award under the statute, which is $1,100 in compliance with Judge Sparks' order. It would have made the offer anyway, but it was in compliance with Judge Sparks' offer. And plaintiff's counsel didn't respond. And there was no verbal communication of settlement offers. With all due respect to Mr. Brown, he wasn't around. I was. But what I will tell you is that the only written communication was our initial $1,100 offer of judgment, which was not responded to, and then the settlement on the eve of trial. In that case, what happened was the consumer says in his deposition, $1,000 would be fine. That's all I'm looking for, which is exactly $100 less than what we offered to pay him before our client incurred all of these costs. And that's where the problem is in these statutes. Because the plaintiff's attorneys are the only one who benefit from continuing the litigation. My client has to pay their attorney's fees. The consumer, heaven forbid, if the consumer loses at trial, the court costs that are awarded to the defendant are in the name of the consumer. So Mr. Tejero would not only be, which is the situation he finds himself in now, not only would he still owe the money, he would also be liable for a judgment for court costs to our clients. Plaintiff's counsel don't pay those court costs. They want you to read 1692K to apply only to the consumer. They want the benefit of the statute with none of the risk. He got court costs after . . . Not in this case. Okay. I'm just showing you . . . I thought after it settled and they non-suited, he got court costs? No. I thought that would be, I mean, some sort of sanction. Judge Elrod, I'm sorry. I was trying to show how the statute works to the benefit of the plaintiff's attorney and how it shields them from any risk. Because even when we try the cases and we get a court cost judgment or we win an MSJ . . . Isn't that an argument for Congress, though? That might be a little bit. But my point being is that 1692K is not read to apply only to the consumers. And the way that the plaintiff's attorney is wanting you to Let's talk about how it would apply to award costs to the defendant, to the credit agency. So I'm looking at the text of it, and it says that the action has to be brought in bad faith for the purpose of harassment. And what I don't understand is how you can say that the action is brought in bad faith for the purpose of harassment if it survives summary judgment. Is there a case that has held that? Judge, actually, I think that's a great question. And I would point to the court for a couple of things. One, there has been, in the Gettwade v. Perez case, which is not a 1692 case, but in that case, the Fifth Circuit actually looked at a situation where they found what the plaintiff was doing was . . . what the attorneys was doing was completely legitimate under the law. There was not a problem with their actions. But the effect of it was harassment. And the effect of it was in bad faith. And so under 1692K, if you apply that same logic, you can have something that is a technical violation. But if you choose to use that technical violation as a way to be then a harassing action or to become abusive to the other party, then it is bad faith. You can have a legitimate claim and still be in bad faith. And that's what the Gettwade v. Perez case, which we cited in our brief, talks about. I mean, I understand the complaints with the statute. As Judge Elrod points out, we're not at liberty to rewrite it. We take the text as we've got it. And it strikes me as a very difficult argument to say that it's in bad faith if the debtor sends a letter that says, I dispute this amount. You're not sending what it . . . I didn't use the word dispute. You're not reporting the right number, and I will not pay it. And then it's reported as an undisputed debt anyway. I mean, it seems to violate the statute, and that's why it would survive summary judgment. So to then say that the action is brought in bad faith, it's a slightly different question than whether the litigation tactics that come after it's brought are in bad faith, right? There's other statutory provisions that apply to the post-filing, right? But the only question, as I understand it, is was it brought? That is, was the complaint filed in bad faith? Sure. And, Judge Alder, I appreciate that. I don't think that's what Judge Sparks' order meant. I think Judge Sparks, when you look at it, he was looking at the totality of facts and said that this was in bad faith, given that they had to offer a judgment that would have made their client whole, and they are creating these technical violations by creating a scheme that Judge Sparks found to be offensive. But very telling in his order, he said that the first two grounds, which was failure to comply with the standing order and proceeding with litigation when you had a dollar amount that was greater than what you would have recovered, would have justified his Rule 11 sanctions. I know that Appellant Counsel only talked about the scheme, but that was the third thing in Judge Sparks' specific order that he found to warrant Rule 11 sanctions. It is true that we didn't actually move for Rule 11 sanctions, but that is what Judge Sparks came up with. We did, in fact, ask for 1692 case sanctions under the Chaudhry case out of the Fourth Circuit, and we also asked for 1927 sanctions, but Judge Sparks could have awarded the sanctions under his inherent authority, given the totality of circumstances that he had before him, and he warned them. That's really important, because in the original, the summary judgment order where he denied their claim and granted part of my client's claim, he said, I find this to be troublesome because it looks to me like this was a scheme by the plaintiff's attorney, it's not clear the plaintiff ever disputed the debt, and I will be considering this, and sanctions will be awarded at the end of the trial, including attorney's fees and costs. So he set it up in his summary judgment order, saying I'm concerned about all of this based on the evidence before me. And the specific testimony was, and I can see where he got bad faith, because of the fact that the consumer said that he wasn't disputing the debt. He thought maybe the amount was wrong, but he wasn't sure. He had never checked his credit report, didn't know anything about it until he walked into the plaintiff's attorney's office, who then created the technical violation. So I think that's what Judge – I mean, I'm doing a little mind reading there, I guess, but I think that's what the totality of facts when you read Judge Sparks' order, it's not just the initial filing, it's the whole facts all the way through the end of the case. And that's not – that's something that's also done. There's a case called Tucker v. CBE out of the 11th Circuit in a situation where a consumer was complaining about getting too many telephone calls. And over this course of discovery, what they found was that it was a different member of the consumer's family that they were actually calling for, and they didn't drop it. And then they actually found sanctions against them for not dropping the original case when they had evidence that should have required them to do so. So I think it's the same thing. Once you know that the position you've taken is wrong as an attorney, you have an obligation to correct it. Why is the position wrong? I'm sorry? You can go into many jurisdictions around the country, including this same jurisdiction, and recover and get good fees. Why is it wrong? I mean, it may be unseemly to some people, but if it's legally allowable, why is it wrong such that you should be threatened to keep these suits away when other courts are awarding big judgments in them? Judge, I mean, let me give you a perfect example. There's an opinion that just came out of the 7th Circuit. It's the case, and we didn't cite it, but I can give you a cite. It's Casillas versus the Madison Avenue Association, which is a 7th Circuit opinion from June of 2019. I don't have a Westlaw cite. I do have a court cite, which was number 17-3162. In the Casillas case— Do you know of this case, too? Well, you're going to give him a good cite to it after the hearing. Yes, ma'am, I will. And he's going to have a chance to send us a 28-J in it, and you can talk about it. Yes, ma'am. Thank you. In the Casillas case, what happened was that there was a question of standing, the same situation where there was a technical violation and the court found that there was nobody really harmed. And the district court, affirmed by the 7th Circuit, said, you guys are—it's the same thing. The plaintiff's attorney was finding an ambiguity because the plaintiff's attorney chose to find an ambiguity in a letter, and the court said, you're finding a technical violation. There's not really a harm here. You're creating a lawsuit to benefit from it, and we're not going to allow it. So the point is that there are some of the courts that do grant fees, you're right, and they do give awards, but now the courts are starting to say, if this is a technical violation and nobody's really harmed, and it's created by the lawyers, by the plaintiff's lawyers, who are going to get thousands of times more than the plaintiffs are in terms of tens of times more than the plaintiff's attorneys, we're not going to reward that kind of behavior. And that's what the 7th Circuit did, and they're not what I would call a defense-friendly jurisdiction, Your Honor. So even the 7th Circuit is starting to say there ought to be some realistic look at the FDCPA to see if these folks are taking advantage of it. If you adopt what the plaintiff's attorneys are suggesting and never apply 1692K to the plaintiff's attorneys, then you reward them for that behavior of creating lawsuits, just like the Davis case, where they did not have a claim before they walked into a plaintiff's attorney's office, and that is wrong. Lawyers shouldn't create it. I'm sorry. Yeah, sure. But the same letter that was sent to your client in this case has been used in several other cases that did not find it to be intentionally misleading or creating a technical violation or sent in bad faith. There's a whole series of these cases, some in the Western District, others other places, where, as far as I can tell, Judge Sparks is the first judge to have looked at this and said, I think this is an intent to create, in your words, a technical violation. In fact, there was one case that was seven months earlier than this one from the Western District of Texas involving virtually the same letter. So I'm not sure how we—it just seems like a high legal standard and the same letter being treated in disparate ways. To Judge Elrod's question, it seems it's hard to— I don't understand how you fault the plaintiff's counsel for doing what these courts are saying can be done. In the case with Judge Pittman's case, which was actually set for oral argument. We really probably shouldn't talk specifically about that other case unless both sides— I don't know if— I would just point out that that case was on appeal, and so it's not clear. Okay, it's on appeal. That's great. I just didn't want to be talking about that case specifically if only one side's here or whatever. Is he going to be the lawyer in that case too? So you're all here, but we've taken that case off the calendar. I would just say that Judge Pittman's order, given the circumstances, the $60,000 verdict, all that's on appeal. So I'm not sure that that's a settled case that any of us should be relying on. Yeah, but nobody is threatening the person with bar sanctions either, and that's a big deal for a lawyer to be thinking you're going merrily along and you're doing everything— I mean, yeah, you think you found a loophole that you can take advantage of perhaps. It's a big—I mean, he's— I don't think Judge Sparks threatened them with bar sanctions in this case, Your Honor. He did not. In their motion to recuse, they cited that Judge Sparks had submitted and asked for them to look at them in a different case, not in this case, Judge. It wasn't in this case. Well, he's mentioning that I've already made you look. I mean, that's—it's bringing it up that, you know— I don't think that Judge Sparks actually did that in this order. Okay. But in their motion to recuse, they do talk about—they do attach a copy of the letter. So that's where the court— Well, he has— He did not attach— Not in this case, then, but that he— The other case is on appeal too, Judge. So I don't want to— Okay. Okay, but that's what—okay, at the very least, we can say that the issue is unsettled. All of these issues are unsettled, aren't they, from your perspective even? No, I think the Evans case in the Seventh Circuit in fairness to plaintiff's counsel was in their favor. It went in their favor. Yeah, but to the extent that you're saying that it's wrong to do this, that's unsettled. There is no clear precedent that that is wrong to do this. Actually, the Fourth Circuit says that you can award—what I was saying was that you should be allowed to award $1692,000 fees to the defendant, and the Fourth Circuit says against the attorney, not just against the sole plaintiff. That's what I was talking about, Your Honor. I'm sorry if I confused you. Yeah, but whether or not it's bad faith to begin with. Oh, I see what you're saying, Judge. Bad faith, if this is bad faith, even though it's a legitimate lawsuit, is an unsettled issue across the country and certainly within the Fifth Circuit. Yes, ma'am. That point, I understand where you are now. Yes, ma'am. That is true. But, again, Judge Sparks didn't make it just on the filing of the suit. He looked at a whole circumstance of facts, including the fact that the consumer said $1,000 would have been enough for me, which is—that's part of the problem, is that if the defendant pays them on the front end, which—conceding to the Court's point that they filed an arguable claim, whether or not we agree with it, the defendant offered to pay them on the front end, and they chose not to do that but instead extended it. And in that situation, they are doing what the Gatewood case said, which is they're acting in bad faith and continuing the litigation in an unfair manner, when their resolution was at the front end. And the only reason they're doing it is to run up attorney's fees because the statutory damages are fixed at the beginning. So that's it. My only point, Your Honor, is that I think Judge Sparks' order is a lot larger than just the initial filing, and I would invite the Court to look at that. Thank you. Thank you, Your Honor. I'll try to respond in the order that makes the most sense to me, at least. First is I want to address this creating technical violations argument. By counsel's argument, if an attorney represents a consumer, the consumer walks in and says, hey, I've got something going on with this debt collector, and the attorney then writes a letter of representation to that debt collector that says, I represent them. You need to communicate with me going forward. Then the debt collector turns around and communicates directly with the consumer. Then the attorney just created the violation because they sent the rep letter saying, you've got to talk to me, and the debt collector ignored the law and contacted the consumer directly anyway. So the fact that an attorney was involved and took steps to protect and defend their client doesn't mean they created the technical violation. The technical violation occurred because something triggered an obligation on the part of a debt collector, something that's been recognized by Congress and is stated plainly in the text of the statute, and the debt collector chose not to comply with the law. So the violation was not created by the attorney. The violation was the direct result of the actions of the debt collector. But the attorneys know good and well that this is a way that a violation often occurs. Sure. A violation often occurs when debt collectors don't do things that they're supposed to do, and you're perfectly within your rights to tell the debt collector, do this thing that you are required to do under the statute. And then they have a choice. They can do it or not do it. But the fact that they didn't do it doesn't mean that the attorney manufactured the claim. It means that the debt collector chose not to comply with the law. And then here Mr. Tejero testified in his deposition that he thought the amount, $2,111, was too big. He thought it was excessive. So when the letter says the amount you are reporting, $2,111, is not accurate, that directly comports with Mr. Tejero's own testimony that the amount was too large. With respect to the- Do you think it's inappropriate to continue with the case if the client says that that's enough money? Well, again, I think that the- Not the amount of the debt, but the amount of the- Well, I think that there's a gotcha moment in the deposition that I don't think should determine the case strategy because the client also testified in that same deposition that he knew about the $1,101 offer. He knew that it was an offer of settlement, and he made the affirmative choice not to respond to it, i.e. to reject it. So to say that, hey, $1,000 would be enough, but when he also testified in that same deposition that $1,100 was not enough for him to accept the offer, I think it's unfair to say that they should have changed course in the litigation. And then, again, that Texas Fair Debt Act claim, make whole, is different from what you might actually be entitled to under the law. Exemplary damages can far outstrip actuals or statutory damages, as they did in the jury verdict handed down in the Jones case, and as we believe that they would in this case until Judge Sparks threw out the Texas Fair Debt Act claim. With respect to the Gate Guard v. Perez case, I want to raise that because there was gross misconduct by the government attorney in that case. They were accused of destroying evidence. They were accused of conducting a completely slapshot investigation where they were supposed to interview 400 people to determine whether they were employees or independent contractors. They interviewed 17 and then charged ahead. And then during the litigation, a case on very similar facts was decided soundly against them, but they made no change of position. So the facts of that case have no bearing on the facts of this case. From the outset, everything that the attorneys did was in good faith and complied with the law. With respect to comparing this case to the Davis case, first of all, that case is not about sort of flipping the switch on 1692K to have the fees go in the other direction, but it's whether that outrageous $130,000 fee award should have been properly granted. Here the fee request was $14,000. And not to rip anything from the headlines, but there's no allegation of collusion. So when you don't have collusion, and the Davis case was premised on a documented history of collusion to manufacture a nonsense claim for the purpose of enriching the attorneys, I do think that the cases have nothing to do with each other. And then I guess lastly, because I'm running out of time, or maybe second to lastly, with respect to the value of the settlement being raised for the first time on reply, in their response brief they said that the settlement that was ultimately obtained was less valuable than the offer of judgment that was originally made. And so on reply we clarified that the total value of the settlement ultimately obtained was higher. And then lastly, if a defendant makes an offer of judgment and the client rejects it and then loses, there is a remedy. Those plaintiffs, attorneys, don't get any of their fees, especially the ones that came after the offer of judgment. But rejecting a settlement, taking a risk that you're ultimately going to prevail at a higher amount, and then having that risk not bear out doesn't mean that the fees suddenly should fly in the other direction, especially when there's no evidence of bad faith. All right. I see I'm out of time. Thank you, Your Honor. Thank you. We have your case. It's submitted. We appreciate the arguments today.